UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA WILLIS,

        Plaintiff,

v.                                    Case No. 11-11384
                                    Honorable Patrick J. Duggan

LEGAL AID DEFENDER ASSOCIATION,
INC. and DEIERDRE L. WEIR,

        Defendant.

_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S EMERGENCY MOTION TO COMPEL AND FOR SANCTIONS

On April 1, 2011, Plaintiff filed this lawsuit against Defendants Legal Aid

Defender Association, Inc. ("LAD") and Deierdre L. Weir ("Ms. Weir") (collectively

"Defendants").  In her Complaint, Plaintiff alleges that Defendants violated the Family

and Medical Leave Act ("FMLA") when her employment with LAD was terminated on

June 2, 2010.  Presently before the Court is Defendants' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56, filed October 17, 2011.  The motion has

been fully briefed and the Court held a motion hearing on January 19, 2011.

Prior to the motion hearing, on January 17, 2012, Plaintiff filed an emergency

motion to compel and for sanctions and a renewed motion to stay the hearing on

Defendants' motion for summary judgment.  The Court denied Plaintiff's motion to stay

in a text-only order entered the following day.  On the day of the hearing, January 19,

Plaintiff also filed a motion to file additional information in response to the motion for

summary judgment.  At the hearing, the Court indicated that it would consider Plaintiff's additional information and granted Defendants a week to respond.  On January 23, 2012, Defendants' counsel informed the Court and opposing counsel that Defendants do not believe a written response to Plaintiff's additional information is needed and that they sufficiently addressed at oral argument any issues raised in Plaintiff's filing.

## I.      Plaintiff's Emergency Motion to Compel and for Sanctions

This motion relates to the deposition of Ms. Weir, which Plaintiff noticed for January 11, 2012, after Magistrate Judge Steven Whalen granted Plaintiff's motion to compel the deposition.  Apparently, Plaintiff's motion to compel followed from her counsel's failure to take a single deposition before discovery closed on September 30, 2011 pursuant to the Court's Scheduling Order.[1]

In the pending motion to compel and for sanctions, Plaintiff claims that Ms. Weir and her attorney terminated the deposition before the allotted one day of seven hours, *see* Fed. R. Civ. P. 30(d)(1), and that defense counsel made improper objections throughout the deposition.  It appears from the pleadings, however, that Ms. Weir and defense counsel made themselves available at Plaintiff's counsel's office for the requisite seven hours (or at least a period close to that limit) but Plaintiff's counsel arrived late, took excessive breaks, and (due to a change of the attorneys conducting the deposition on Plaintiff's behalf after the deposition was well underway) posed numerous questions

---

[1]Plaintiff also moved to extend the discovery deadline, generally; however, Magistrate Judge Whalen denied this request.  (*See* Doc. 36.)

covering the same subject areas.  Furthermore, in her motion, Plaintiff sets forth some of the subject areas she wishes to pursue in the continued deposition of Ms. Weir.  In this Court's view, the areas already were covered with Ms. Weir and/or are not dispositive of the motion for summary judgment.  In fact some of the information is provided in the deposition testimony of Ms. Weir that Plaintiff attached to her January 19 motion to supplement the record. For these reasons, the Court is not going to allow the continued deposition of Ms. Weir.

The Court also does not find that sanctions against Defendants are warranted based on defense counsel's conduct at the deposition.

## II.    Factual and Procedural Background

Except where indicated, the facts relevant to Plaintiff's claim are not in dispute. Plaintiff was employed as the Vice President of Human Resources at LAD from October 15, 2001 until her termination on June 2, 2010.[2]  Ms. Weir, LAD's President and Chief Executive Officer, supervised Plaintiff during her employment.

On Monday, April 26, 2010, Plaintiff left Ms. Weir a voice mail message indicating that she was not coming to work and would be absent for approximately one week.  The following Monday, May 3, Plaintiff left another voice mail message for Ms. Weir, stating that she would be out for an extended period, probably four to six weeks. Consistent with its "normal process for anyone out more than two weeks [for medical

---

[2]Plaintiff's title originally was Human Resources Director.  It changed in October 2008, as part of a revision in job titles within LAD.

reasons]" (*see* Pl.'s Dep. [Att. 1 to Defs.' Mot. Ex. 1] at 136), LAD sent Plaintiff FMLA forms (including a medical certification form) to complete and return to LAD.  Pursuant to Plaintiff's request, LAD also sent her form(s) to apply for short-term disability benefits.

On May 17, 2010, Lynn McLeod, LAD's Human Resources Assistant, contacted Plaintiff to inquire about the status of the FMLA certification form.  The following day, Plaintiff presented the form to her clinical psychologist, Aldona M. Valivonis ("Dr. Valivonis"), expressing some concern that her supervisor, who was LAD's CEO, probably would be reviewing the documentation in Plaintiff's absence.  (Pl.'s Dep. at 90.)

On May 18, 2010, Dr. Valivonis faxed the FMLA certification form concerning Plaintiff to LAD.  (Pl.'s Dep. Ex. 12.)  Dr. Valivonis neither signed nor dated the form. (*Id.*)

On the form, Dr. Valivonis provided that Plaintiff's "condition" commenced April 23, 2010, with a probable duration "to be determined."  (*Id.*)  Dr. Valivonis did not identify Plaintiff's condition anywhere on the form.[3]  Dr. Valivonis did indicate that she had been treating Plaintiff for the unspecified condition twice a week since April 26, 2010.  (*Id.*)  Dr. Valivonis further answered "yes" to the question asking whether Plaintiff had been referred to another health care provider for evaluation or treatment.  (*Id.*)

In response to the follow-up question seeking "the nature of such treatments and

---

[3]At her deposition, Dr. Valivonis testified that Plaintiff suffered from depression. (Valivonis Dep. [Defs.' Mot. Ex. 1D] at 47.)

4

expected duration of treatment," Dr. Valivonis wrote: "Bradley Klein DO ongoing."  (*Id.*)

Dr. Valivonis indicated on the form that Plaintiff was unable to perform "all job

functions."  (*Id.*)  Where asked to "[d]escribe other relevant facts, if any, related to the

condition for which the employee seeks leave (such medical facts may include symptoms,

diagnosis, or any regimen of continuing treatment such as the use of specialized

equipment)," Dr. Valivonis wrote: "Patient's condition makes it impossible for her to

perform her work functions.  She is receiving a minimum of twice weekly treatment to

resolve her medical condition[.]"  (*Id.*)  Where asked to indicate the ending dates of the

period of incapacity, whether the employee will need to attend follow-up treatment

appointments or work part-time or on a reduced schedule because of the medical

condition, and whether the condition will cause episodic flare-ups preventing the

employee from performing her job, Dr. Valivonis indicated: "to be determined."  (*Id.*)

On May 20, 2010, Ms. Weir sent Plaintiff a letter advising her that LAD received

the Certification of Health Care Provider form in support of her request for FMLA leave

but that the form "was incomplete and insufficient in several respects."  (*Id.* Ex. 12A.)  In

addition to Dr. Valivonis' failure to sign and date the form, Ms. Weir identified some of

the following specific insufficiencies:

No. 1– Probable duration of condition was listed as "to be determined"

> This is not sufficient.  We understand that a definitive end
> date cannot always be determined, but the health care
> provider should make some sort of determination now, rather
> than stating the probable duration is to be determined. . . .

5

No. 1 – The nature and expected duration of treatments by health care provider to which you were referred states "Bradley Klein, DO ongoing"

This answer is not responsive to the question, and your health care provider must indicate the nature of the treatments and the expected duration.

No. 4 – The relevant medical facts were listed as "Patient's condition makes it impossible for her to perform her work functions. She is receiving a minimum of twice weekly treatment to resolve her medical condition."

This answer is vague and not sufficient. Medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. The answer does not include sufficient medical facts to determine whether full-time leave is necessary. The health care provider must be more specific, which could include, for example, the symptoms that prevent you from performing your job functions, or why the twice weekly treatments require your absence full-time, etc. (The Health Care Provider may include a diagnosis if, in her judgment, it would be helpful. However, a diagnosis is not required to grant the leave if other medical facts are provided that answer this question sufficiently.)

No. 5 – The estimated ending date for the period of incapacity is stated as "to be determined"

This is not sufficient and we cannot determine whether you are currently incapacitated.

(*Id.*) Ms. Weir enclosed a new set of documents and directed Plaintiff: "Please have your health care provider fax a complete and sufficient certification to Lynn McLeod . . . within seven calendar days. If you have any questions, feel free to call me . . .." (*Id.*)

Plaintiff testified during her deposition in this matter that she received Ms. Weir's letter on May 26, 2010. (Pl.'s Dep. at 99.) Apparently the delay in Plaintiff's receipt was

6

due to Defendants having addressed the letter to the wrong zipcode (although the address otherwise was correct). (Weir Dep. [Ex 1 to Pl.'s Mot. to File Additional Information] at 32-33.) On the same date, Plaintiff forwarded the letter to Dr. Valivonis via e-mail. (Pl.'s Dep. at 106.)  Plaintiff told Dr. Valivonis in her e-mail that "according to FMLA regulations, as [her] direct supervisor, she [Ms. Weir] is not entitled to the medical information."  (Valivonis Dep. [Defs.' Mot. Ex. 1D] Ex. 4.)  According to Plaintiff, when she met with Dr. Valivonis on May 28 for a regularly scheduled session, Dr. Valivonis shared her concerns about Ms. Weir receiving more specific medical information concerning Plaintiff and told Plaintiff "that she would like to proceed by speaking with the Human Resources Assistant, Ms. McLeod, about having someone else review those documents so that both parties could be compliant."  (Valivonis Dep. at 106.)

On May 28, 2010, the Friday before Memorial Day, Dr. Valivonis attempted to contact Ms. McLeod to obtain her written assurance "that this information [any additional medical information Dr. Valivonis provided] was going to stay in human resources."  (*Id.* at 62-64.)  Ms. McLeod did not answer the call.  Dr. Valivonis testified during her deposition that she therefore left a voice mail message for Ms. McLeod, indicating that she had concerns about the FMLA form. (*Id.* at 65.)  Dr. Valivonis was on vacation the following week, and did not hear back from Ms. McLeod.

Plaintiff testified that she tried to call Ms. McLeod on June 1 to determine whether Dr. Valivonis had spoken to her.  (Pl.'s Dep. at 128.)  When Ms. McLeod did not answer, Plaintiff did not leave a message.  (*Id.*)  Plaintiff explained that she did not leave a

7

message because her call would show as a "missed call" on Ms. McLeod's phone and Ms.

McLeod typically would call Plaintiff back when she saw that she missed her call. (*Id.*)

Plaintiff did not attempt to call again because, on June 3, 2010, she received a letter from

LAD terminating her employment. (*Id.*)

In the termination letter, dated June 2, 2010, Ms. Weir explained that because

Plaintiff failed to provide a sufficient and complete FMLA certification form, her absence

from work since April 26, 2010, was considered unauthorized leave. (Pl.'s Dep. Ex.

12B.) Ms. Weir further stated:

> At this point, you are on unauthorized leave without explanation or
> duration, and without FMLA certification and designation. Since your
> status over the past several weeks is unexplained and unapproved, this
> sequence of events leads me to conclude that you have abandoned your
> employment with LAD.

(*Id.*) Ms. Weir informed Plaintiff that her termination was effective as of the date of the

letter.

Ms. Weir conceded during her deposition that, because she was not usually

involved in the FMLA approval process, she was unaware of how long LAD normally

provided employees to return FMLA certification forms or whether it had a specific

policy outside of what was provided for in the FMLA. (Weir Dep. at 62.) Ms. Weir

indicated that it was Plaintiff's responsibility, when acting in her capacity as the Vice

President of Human Resources, to decide how long to give employees to return the

paperwork. (*Id.*)

In the meantime, Plaintiff also had applied for short-term disability benefits

through LAD's carrier, Sun Life Assurance Company ("Sun Life").  Plaintiff sent

information in support of her claim to Sun Life directly.  (Defs.' Reply Ex. 1 ¶ 4.)

Apparently, Sun Life did not approve Plaintiff's application initially because it lacked

sufficient information concerning her condition.  (*Id*.)  Sun Life eventually approved

Plaintiff's claim on July 30, 2010.  (*Id*.)

On October 7, 2010, Plaintiff filed an unfair labor practice charge with the

National Labor Relations Board ("NLRB").  (Defs.' Mot. Ex. 1B.)  In her charge,

Plaintiff asserted that she was discharged from LAD because she opposed requests to

commit violations of the National Labor Relations Act ("NLRA").  (*Id*.)  The NLRB

found insufficient evidence to pursue the charge.  The decision was affirmed on appeal on

February 17, 2011.

As indicated earlier, Plaintiff filed this lawsuit against Defendants on April 1,

2011.  In her Complaint, Plaintiff alleges one count in which she asserts that Defendants'

actions in terminating her employment constituted interference and retaliation in violation

of the FMLA.

## III.   Standard for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central

inquiry is "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (internal quotations marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## IV.   Applicable Law and Analysis

### A.   The FMLA Generally

In 1993, Congress enacted the FMLA to balance "the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b). Congress sought to provide employees with the right to "take reasonable leave for medical reasons," while also doing so "in a manner that accommodates the legitimate interests of employers. *Id*. §§ 2601(b)(2), (3).

10

Under the FMLA, covered employees are permitted to take up to twelve weeks of unpaid leave per year for specified reasons including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). A "serious health condition" is defined in the statute as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." *Id.* § 2611(11). The statute permits an employer, at its discretion, to require that requested leave "be supported by a certification issued by the health care provider of the eligible employee." *Id.* § 2613(a).

Where the employer elects to require certification to assess an employee's qualification for FMLA leave, the statute's implementing regulations provide that the employer must inform the employee "of the anticipated consequences of [the] employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d). The regulations further provide that, when certification is requested, "[t]he employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." *Id.* § 825.305(b).

Where the requested certification is submitted, but the employer finds it incomplete or insufficient, the regulations require the employer "to state in writing what additional information is necessary to make the certification complete and sufficient," and

11

to provide the employee "seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency." *Id.* ¶ 825.305(c). "If the employee fails to provide the employer with a complete and sufficient certification, despite the opportunity to cure the certification as provided in [29 C.F.R. § 825.305(c)], or fails to provide any certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313." *Id.* § 825.305(d). Stated differently, whenever certification is requested, "it is the employee's responsibility to provide the employer with complete and sufficient certification and failure to do so may result in the denial of FMLA leave." *Id.* § 825.306(e)

The FMLA identifies the minimum content that must be included in the certification issued by the employee's health care provider to render it "sufficient": "(1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within the health care provider's knowledge, and (4) a statement that the employee is unable to perform her job duties." *Novak v. Metrohealth Med. Ctr.*, 503 F.3d 572, 578 (6th Cir. 2007) (citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) (citing 29 U.S.C. § 2613(b)). "'[T]he medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider.'" *Id.* (quoting *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 955-56 (S.D. Ohio 2005) (citing 29 C.F.R. § 825.307(a)). "[T]he employer may overcome this presumption by showing that 'the certification is invalid or inauthentic.'" *Id.*

12

**B.      Plaintiff's FMLA Claim Under an Interference Theory**

The FMLA makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under [the statute]."  29 U.S.C. § 2615(a)(1).  To prevail on an FMLA interference claim, a plaintiff must show:

> that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled.

*Novak*, 503 F.3d at 577-78 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)).  In their pending summary judgment motion, Defendants only challenge Plaintiff's ability to establish the third element of her claim: her entitlement to take FMLA leave.  Defendants contend that Plaintiff failed to satisfy her obligation to submit a complete and sufficient certification form to LAD and, therefore, she was not entitled to FMLA leave under the statute and its implementing regulations.

In several cases where the plaintiff-employee failed to submit certification or submitted incomplete or insufficient certification when requested by his or her employer, several courts (including this one) found summary judgment in favor of the employer on the plaintiff's FMLA interference claim appropriate.  *See, e.g., Novak*, 503 F.3d at 578-79; *Culpepper v. BlueCross BlueShield of Tennessee, Inc.*, 321 F. App'x 491, 496-97 (6th Cir. 2009) (unpublished); *Stimpson v. United Parcel Service*, 351 F. App'x 42, 49 (6th Cir. 2009) (unpublished); *Cole v. Harman Corp.*, No. 06-13688, 2007 U.S. Dist. LEXIS

86969, at *34-35 (E.D. Mich. Nov. 27, 2007) (unpublished).  In the present case, it cannot be disputed that the medical certification form Plaintiff submitted to LAD was insufficient and incomplete.  Even Plaintiff acknowledged at her deposition that, in her position as the Vice President of Human Resources, if she received a form not signed by the employee's physician, she would have contacted the employee and indicated that she "can't accept the document without a signature."  (Pl.'s Dep. at 96.)  Additionally, the form submitted by Dr. Valivonis on Plaintiff's behalf fails to set forth "the probable duration of Plaintiff's condition" and "the appropriate medical facts within the health care provider's knowledge regarding the condition."  *See* 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306(a).

This Court cannot agree with Plaintiff that LAD could determine from the limited information provided by Dr. Valivonis that Plaintiff suffered from a "serious medical condition" entitling her to leave under the FMLA.  Contrary to Plaintiff's assertion, this Court does not believe that LAD could conclude she was suffering from any medical condition, much less a "serious" one, simply because she had been seen by a clinical psychologist two times a week over an approximate one month period.  While the frequency and duration of Plaintiff's treatment may have satisfied a portion of the statute's definition of a "serious health condition"– i.e. that the employee is receiving continuing treatment by a health care provider, *see* 29 U.S.C. § 2611(11)– Dr. Valivonis failed to identify any "illness, injury, impairment, or physical or mental condition" suffered by Plaintiff or provide facts enabling LAD to conclude that Plaintiff was

14

suffering from such a condition.  *See id*.

Further, the fact that Sun Life awarded Plaintiff short-term disability benefits almost two months after her termination does not suggest that LAD should have determined that she suffered from a serious medical condition.  The information Plaintiff submitted to Sun Life in support of her application for disability benefits was not reviewed by LAD.  (Defs.' Reply Ex. 1 ¶ 3.)  Notably as well, Sun Life found the information Plaintiff initially provided insufficient to evaluate her short-term disability claim.

Nevertheless, Plaintiff argues that LAD either did not provide her with the full seven days required under the regulations to cure any deficiency or, even if it did, that the statute requires an employer to recognize an employee's "good faith" effort to cure the deficiency or provide the employee "a reasonable opportunity to cure the deficiency." (*See* Pl.'s Resp. Br. at 10-11.)  The undisputed facts establish that LAD provided Plaintiff seven days to rectify the deficiencies in her certification form.  Accepting Plaintiff's testimony as true– as this Court must for purposes of deciding Defendants' motion– she received Ms. Weir's May 20, 2010 "deficiency" letter six days later, or on May 26. Seven days after Plaintiff's receipt, or on June 2, 2010, Ms. Weir terminated Plaintiff's employment.  According to Ms. Weir, "[she] waited until the end of the day on June 2, 2010, before sending the termination letter to [Plaintiff], in the event that information was received."  (Defs.' Mot. Ex. 3 ¶ 6.)

Plaintiff argues that when she was responsible for approving FMLA leave as

15

LAD's Vice President of Human Resources, she gave employees more than seven days to submit adequate certification forms and called employees when their forms were not submitted or were deficient.  Neither the FMLA nor its implementing regulations required Defendants to be as generous, however.  Defendants acted in accordance with the statute.[4]

The FMLA's implementing regulations do allow for an extension of the time to cure a deficiency where "it is not practicable under the particular circumstances despite the employee's diligent, good faith efforts."  29 C.F.R. § 825.305(c); *see also Rager v. Dade Behring, Inc.*, 210 F.3d 776, 779 (7th Cir. 2000) (describing § 825.305(c) as a "tolling provision that might come into play . . . [where] circumstances be such that the plaintiff could not reasonably have been expected to act within the deadline.")  The particular circumstances of the present case, however, in no way support a finding that it was impracticable for Plaintiff to cure the deficiencies in her certification form within seven days of receiving notice of those deficiencies.  *See Rager*, 210 F.3d at 779 (finding that the tolling provision did not apply because the plaintiff "has given no reason why she could not have submitted the required medical documentation by [the deadline] . . ."); *compare, e.g., Uema v. Nippon Express Hawaii, Inc.*, 26 F. Supp. 2d 1241, 1248 (D. Hawaii 1998) (finding that a jury reasonably could decide that the plaintiff's failure to

---

[4]As Plaintiff's counsel pointed out at the motion hearing, even if LAD maintained a policy requiring it to give an employee more time to submit a complete FMLA certification form or if LAD's usual practice was to approve FMLA leave even when the employee's certification form was not timely submitted or was deficient, Defendants' failure to comply with such policies or practices, although *possibly* supporting a breach of contract claim, does not demonstrate a violation of the FMLA.

16

timely provide medical certification was impracticable despite his diligent good faith efforts where the employee's doctor had gone on vacation for two weeks, precluding him from submitting the requested documentation). The evidence indicates that the only barrier to Plaintiff submitting a complete medical certification form within the seven day deadline was her fear that her medical information would be viewed by Ms. Weir and her misapprehension that Ms. Weir's access to this information violated the FMLA. As Dr. Valivonis testified at her deposition, she had no intention of providing any additional information to LAD concerning Plaintiff's medical condition until she had its assurance in writing that the information would not be seen by Ms. Weir. (Valivonis Dep. at 63-64.) As discussed below, neither Plaintiff nor Dr. Valivonis had a legal basis for imposing this requirement on LAD.

Further, the facts in no way suggest that Plaintiff exercised diligence and good faith efforts to cure the deficiencies. Even the case cited by Plaintiff in her response brief provides that "[g]ood faith requires 'at least that the employee contact his employer by telephone and make it aware that he is unable to return his certification before the deadline.'" (Pl.'s Resp. Br. at 10 (quoting *Washington v. Fort James Operating Co.*, No. 00-1300-JO, 2000 WL 1673134, at *5 (D. Or. Nov. 7, 2000)); *see also Peter v. Lincoln Tech. Inst., Inc.*, 255 F. Supp. 2d 417, 441-42 (E.D. Pa. 2002) (finding a jury question as to whether the plaintiff exercised good faith efforts to timely submit FMLA certification form where the plaintiff informed her employer that she had completed her portion of the form and given it to her doctor and that her doctor's office said they would send out the

17

form within the week).  While Plaintiff may have called Ms. McLeod  after receiving

notice of the deficiencies, the undisputed evidence shows that when Ms. McLeod did not

answer, Plaintiff neither left a message nor attempted to call again.  Further, after

discussing the deficiencies with Dr. Valivonis, Plaintiff never followed-up to make sure

that Dr. Valivonis had submitted a complete and sufficient form or even contacted LAD

to discuss her concerns regarding the form.  None of the cases cited by Plaintiff suggest

that it is for a jury to decide whether an employee timely submitted a sufficient and

complete certification form where there are no factual disputes relevant to whether it was

practicable to comply with the time frame set forth in the regulations or to whether the

employee exercised diligent good faith efforts to cure the deficiency.

Plaintiff's concern regarding the submission of medical information to Ms. Weir

does not cause her delay to have been in good faith.  Whether or not "[t]he FMLA

explicitly prohibits an employee's direct supervisor from contacting the employee's

health care provider," as Plaintiff contends (*see* Pl.'s Resp. Br. at 10), that did not happen

in this case.  LAD provided *Plaintiff* with a FMLA certification form to be completed by

her health care provider and LAD informed *Plaintiff* of the deficiencies in the

certification form submitted by Dr. Valivonis.  Thus while the statute's implementing

regulations limit who the employer may use among its employees to contact the health

care provider, *see* 29 C.F.R. § 825.307(a), this provision is not relevant to the facts of the

18

present case.[5]  The statute unequivocally allows an employer to do what LAD did with respect to Plaintiff's leave.  *See* 29 U.S.C. § 2913(a) ("An employer may require that a request for leave . . . be supported by a certification *issued by the health care provider of the eligible employee*"); *see also* 29 C.F.R. § 825.305(c) ("The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient . . .").[6]

---

[5]29 C.F.R. § 825.307(a) states:

(a) Clarification and authentication. If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider. However, the employer may contact the health care provider for purposes of clarification and authentication of the medical certification (whether initial certification or recertification) after the employer has given the employee an opportunity to cure any deficiencies as set forth in § 825.305(c). To make such contact, the employer must use a health care provider, a human resources professional, a leave administrator, or a management official. Under no circumstances, however, may the employee's direct supervisor contact the employee's health care provider.

When Plaintiff sent an e-mail to Dr. Valivonis, attaching Ms. Weir's "deficiency" letter, she quoted and cited the above provision in support of her expressed belief that it was improper for Ms. Weir to receive and review her medical information.

[6]At least two courts have held that the FMLA does not prohibit an employee's supervisor from reviewing the medical information regarding the employee that is submitted in support of the employee's request for FMLA leave.  *See, e.g., O'Reilly v. Rutgers*, No. 04-5785, 2006 WL 141895, at *5 (D.N.J. Jan. 19, 2006), *aff'd* 223 F. App'x 131 (3d Cir. 2007) (rejecting the plaintiff's argument that the FMLA prohibited her employer from requiring that she submit medical information to her department head in support of her request for FMLA leave); *Kitts v Gen. Tel. North, Inc.*, 2:04-CV-173, 2005 WL 2277438, at *13 (S.D. Ohio Sept. 19, 2005) (rejecting the plaintiff's argument that the defendant violated the FMLA by compelling her to disclose privileged medical information to unauthorized personnel, reasoning that "[w]hile employers may enact policies restricting who, within the company, may have access to that information,

(continued...)

In an affidavit submitted in support of her response, Plaintiff asserts that during her tenure as LAD's Vice President of Human Resources, "LAD's policies on medical leave, and FMLA, were . . . not rigid when it came to the required information on the employee's medical documentation."  (Pl.'s Resp. Ex. 1 ¶ 7.)  She attests that information such as that contained in the form completed by Dr. Valivonis was considered adequate to qualify an employee for FMLA leave.  (*Id.* ¶¶ 6, 7.)  These assertions, however, directly contradict Plaintiff's earlier deposition testimony that it was LAD's usual practice to send FMLA certification forms to any employee seeking leave of more than two weeks and that she would have told an employee submitting an unsigned form that it was deficient. As such, her affidavit does not create an issue of fact.  *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006).  In any event, what Plaintiff may have done in her position as LAD's Vice President of Human Resources and what LAD may have done in other circumstances are irrelevant with respect to Plaintiff's FMLA claim because the statute and its implementing regulations allow employers, *in their discretion*, to require an employee to complete a medical certification form and outline what must be provided on the form to render it complete and sufficient.

Plaintiff also argues that, even if she failed to cure the deficiencies in her

---

[6](...continued)
nothing in the FMLA imposes a similar restriction.")

certification form, this did not permit LAD to terminate her employment.[7]  This argument is meritless.  The FMLA's implementing regulations expressly permit an employer to deny FMLA leave where the employee fails, where requested, to provide timely, complete, and sufficient certification.  29 C.F.R. §§ 825.305(b), (c).  Neither the statute nor its implementing regulations address the consequences an employer may impose if an employee's absence does not qualify as FMLA leave and therefore is deemed unexcused.  Undoubtedly Congress left such decisions to the discretion of employers.  The Sixth Circuit's decision in *Killian v. Yorozu Automotive Tennessee, Inc.*, 454 F.3d 549 (2006), cited by Plaintiff, does not hold otherwise.

The issue in *Killian* was whether the plaintiff's employer properly terminated the plaintiff when she timely notified it of the need to extend her FMLA leave and the employer failed to give the plaintiff the fifteen days required under the regulations to provide certification to support the extension.  Because the employer terminated the plaintiff six days after it requested the additional certification, the Sixth Circuit held that the termination violated the FMLA.  454 F.3d at 555.  After pronouncing its holding, the court stated further: "even if [the Plaintiff] failed to provide the certification in a timely fashion, [the employer's] remedy under the regulations was once again delayed leave, not

_____

[7]In her supplemental filing, Plaintiff points out that she had unused vacation time for which she was compensated following her termination.  Accepting this as true, and assuming that LAD should have considered Plaintiff's absence as excused vacation time (although the Court expects that LAD requires employees to seek approval of vacation time before they go on vacation), LAD's failure to apply the unused vacation time to justify Plaintiff's absence does not support an FMLA interference claim.

termination." *Id*.  This statement, however, is *dicta*.  Plaintiff does not cite, and this Court could not find, any decision applying this *dicta* to hold that an employer unlawfully terminates an employee for absences deemed unexcused because the employee failed to timely submit a requested FMLA certification or cure deficiencies in a submitted certification.  The Sixth Circuit in fact has upheld terminations in both scenarios.  *See supra* at 12; *see also, Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563 (6th Cir. 2005) (upholding the plaintiff's termination based on a violation of the defendant's leave of absence policy where last violation resulted from the plaintiff's submission of a FMLA certification form one day beyond the fifteen-day deadline).

Equally without merit is Plaintiff's argument that, when LAD notified her of the need to cure the certification form's deficiencies, it was required to inform her of the consequences of failing to do so within the seven day period.  Neither the FMLA nor its implementing regulations require an employer to include such a warning.[8]  In any event, in her letter outlining the deficiencies in the certification form, Ms. Weir specifically warns Plaintiff: "If we do not receive a complete and sufficient certification within seven days, LAD may deny your request for FMLA leave."  (Pl.'s Dep. Ex. 12A.)

In short, because Plaintiff failed to submit a complete and sufficient FMLA certification form when requested, she cannot show that she was entitled to FMLA leave.

---

[8]In contrast, the implementing regulations require that, "[a]t the time the employer *requests* certification, the employer must . . . advise an employee of the anticipated consequences of an employee's failure to provide adequate certification."  29 C.F.R. § 825.304(d).

As such, her FMLA interference claim fails.

### C.     Plaintiff's FMLA Claim Under a Retaliation Theory

The FMLA also proscribes discriminating or retaliating "against any individual for opposing any practice made unlawful by [the statute]."  29 U.S.C. § 2615(a)(2). Absent direct evidence of a retaliatory motive, a plaintiff's FMLA retaliation claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).  *Edgar*, 443 F.3d at 508.  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate:

> that (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian*, 454 F.3d at 556 (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir.2003)).

Defendants argue that Plaintiff cannot establish a *prima facie* case of retaliation because she was not entitled to FMLA leave (due to her failure to submit a complete and sufficient certification form) and therefore was not engaged in activity protected by the statute.  Alternatively, Defendants argue that Plaintiff's claim fails because she cannot establish a causal connection between her activity and her termination.

A number of courts have held that a plaintiff cannot establish a *prima facie* case of FMLA retaliation where the plaintiff failed to submit information, such as a requested FMLA certification form, demonstrating the plaintiff's entitlement to FMLA leave.  *See,*

23

*e.g., Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (holding that the district court

correctly granted summary judgment to the plaintiff's employer where the certification

form submitted by the plaintiff's physician did not show that she suffered from a serious

medical condition and therefore her entitlement to FMLA leave); *Smith v. Hope School*,

560 F.3d 694, 701 (7th Cir. 2009) (indicating that if the plaintiff's leave request was

invalid, then "[she] was not engaging in statutorily protected activity and thus could not

have been fired for asserting her rights under the FMLA"); *Robinson v. Farmers Servs.*

*LLC*, No. 10-02244, 2010 U.S. Dist. LEXIS 110128, at *12-13 (D. Kan. Oct. 14, 2010)

(unpublished) (citing *Myers v. Dolgencorp, Inc.*, No. 04-4137, 2006 U.S. Dist. LEXIS

6559 (D. Kan. Feb. 15, 2006)); *Heard v. SBC Ameritech Corp.*, No. 05-71712, 2005 U.S.

Dist. LEXIS 46464, at *23-24 (E.D. Mich. July 27, 2005) (unpublished), *aff'd* 205 F.

App'x 355 (6th Cir. 2006).

Moreover, under a retaliation theory, "the employer's motive is an integral part of

the analysis." *Edgar*, 443 F.3d at 508.  There is no evidence that LAD terminated

Plaintiff because she *invoked* her FMLA rights.  *See id*. (instructing that FMLA retaliation

"claims impose liability on employers that act against employees specifically *because*

those employees invoked their FMLA rights."); *See also Kauffman v. Fed. Express Corp.*,

426 F.3d 880, 885 (7th Cir. 2005) (observing that the retaliation theory applies where a

company seeks to punish an employee "for exercising rights or opposing an unlawful

procedure").  Instead, the evidence indicates that LAD terminated Plaintiff because she

failed to submit the proper certification to demonstrate her entitlement to FMLA leave

24

and thus her leave was unexcused.[9]  Additionally, after her termination, Plaintiff filed a

charge with the NLRB claiming that she was terminated in violation of the NLRA

because she opposed unfair labor practices.  (Pl.'s Dep. Ex. 14; Defs.' Mot. Ex. 1B.)

The Court therefore concludes that Defendants are entitled to summary judgment

on Plaintiff's FMLA discrimination claim.

## V.   Conclusion

As stated, the Court concludes that Plaintiff is not entitled to the continued

deposition of Ms. Weir or sanctions for defense counsel's conduct at the previously

conducted deposition.

For the reasons stated above, the Court also concludes that there is no genuine

dispute as to any fact material to Plaintiff's FMLA claim and that Defendants are entitled

to judgment as a matter of law with respect to that claim.  Plaintiff's assertion that

Defendants interfered with her FMLA rights fails because Plaintiff never submitted a

complete and sufficient medical certification form when requested by LAD.  Because she

failed to submit the form, Plaintiff has never demonstrated her entitlement to FMLA

leave.  For this reason, Plaintiff also cannot show that Defendants retaliated against her

---

[9]In the additional evidence Plaintiff submitted on the day of the motion hearing, she refers to Ms. Weir's deposition testimony that Ms. McLeod expressed frustration concerning Plaintiff's absence and the responsibilities that fell upon Ms. McLeod as a result thereof.  (Weir Dep. at 89-91, 93.)  Ms. Weir, however, was conveying what Ms. McLeod said to her in conversations, not how Ms. Weir felt about Plaintiff's absences. The evidence does not suggest that Ms. McLeod was involved in the decision to terminate Plaintiff.  Instead, it indicates that Ms. Weir was the decision-maker.

for invoking her FMLA rights.

Accordingly,

**IT IS ORDERED**, that Plaintiff's Emergency Motion to Compel and for

Sanctions is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendants' motion for summary judgment

pursuant to Rule 56 is **GRANTED**.

Dated: January 26, 2012                     s/PATRICK J. DUGGAN
                                            UNITED STATES DISTRICT JUDGE

Copies to:
Richard G. Mack Jr., Esq.
Austin W. Garrett, Esq.
Elizabeth P. Hardy, Esq.
Sonja L. Lengnick, Esq.

26